# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ALan WHITE,                          )
                                     )
   Petitioner,       )
                                     )  No. 17 C 2517
  v.                        )
                                     )  Judge Sara L. Ellis
SHERWIN MILES,[1]                    )
                                     )
   Respondent.        )

## OPINION AND ORDER

  Petitioner Alan White, who is currently incarcerated at Stateville Correctional Center, is

serving a fifty-year sentence for first degree murder and a consecutive ten-year sentence for

attempted first degree murder.  White has petitioned this Court for a writ of habeas corpus under

28 U.S.C. § 2254.  Although the Court reaches his ineffective assistance of counsel claim as it

relates to counsel's failure to call Tanisha Nash and Donald Rogers and to introduce certain

police reports into evidence, White has not shown that the state court's decisions on these issues

were contrary to or an unreasonable application of clearly established federal law.  The Court

finds the remainder of White's claims procedurally defaulted.  Thus, the Court denies White's

petition for a writ of habeas corpus.

## BACKGROUND

  The Court draws the following facts from the state appellate court opinions on direct and

post-conviction review, supplemented by the state trial court record as necessary.  Though White

submits several pages of allegedly additional facts the state courts did not consider in his habeas

---

[1] Sherwin Miles is presently the acting warden at Stateville Correctional Center and the Court makes a substitution of Acting Warden Miles as the Respondent in this matter.  *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

petition, because he has not shown clear and convincing evidence to suggest that the state court's factual findings are erroneous or that the state court made an unreasonable determination of the facts, the Court relies on the state court's factual determinations. *See* 28 U.S.C. § 2254(e)(1); *Thompkins v. Pfister*, 698 F.3d 976, 985 (7th Cir. 2012); *Morgan v. Hardy*, 662 F.3d 790, 798 (7th Cir. 2011).

## I.      White's Trial and Conviction

### A.      Description of the Incident

A shooting near the 4200 block of West Wilcox, Chicago, Illinois, killed Chester Alexander and injured Derrick Nelson. Prosecutors charged White and Demond Carter with the first degree murder of Alexander and the attempted first degree murder of Nelson. Both White and Carter proceeded to a jury trial.

The evidence at trial established that on the evening of July 6, 2006, Lamarius Brooks, a member of the Traveling Vice Lords gang, was selling drugs on the corner of West Wilcox and South Keeler, a corner controlled by the Four Corner Hustlers gang. White and Carter, who belonged to the Gangster Disciples and Four Corner Hustlers, pulled up to Brooks in a car, and Carter asked Brooks for cocaine. Brooks gave Carter the drugs, but Carter did not pay for them and instead told Brooks to leave the intersection. After arguing with Carter and White, Brooks walked toward 4231 West Wilcox, where Brooks' girlfriend, Re-Re, lived with her mother. Carter and White followed Brooks. At some point, Carter snapped his fingers, and White hit Brooks over the head with a gun. Bleeding, Brooks went inside Re-Re's house to get a towel. Carter and White retreated to a porch across the street and several houses down from Re-Re's house.

While in Re-Re's house, Brooks, angry that he lost money and had been injured, called Alexander, also a Traveling Vice Lords member. Alexander picked up Brooks in a Range Rover, and they drove to a gas station to meet five or six other individuals, including Charles Henderson. They eventually returned to Keeler and Wilcox to fight it out and found White and Carter on the same porch. Nelson, Davon Turner, Geremy Johns, Tyrone Thomas, and Michael Pitchford were also in the area. At some point, shots rang out. Once the shooting began, a crowd rushed into Re-Re's house. As Nelson tried to enter, someone shot him once in the back. Alexander ran away from the house toward Keeler.

Shukeyina Godfrey, who was also in the area, ran eastbound on Wilcox toward Keeler and saw Alexander at the corner of Wilcox and Keeler. Godfrey observed a white van driving along Wilcox turn onto Keeler. As she continued to run, she heard more gunshots behind her on Keeler. Someone discovered a wounded Alexander in the grass at 142 South Keeler. He subsequently died from his injuries, with the autopsy revealing four gunshot wounds.

After the shooting, the police collected evidence from the scene and recovered twenty-three fired cartridge cases. They also recovered bullet fragments from the scene and from Alexander's body. Two state firearms experts examined the evidence and observed that the incident involved at least three guns, with one expert opining that the number could have reached seven. On January 8, 2007, the police executed a search warrant on an apartment at 4248 West Le Moyne. There, they encountered Montrell Knight, a Gangster Disciple, and recovered nine guns, including an AK-47 and an automatic handgun that individuals used in the shooting.

**B.    Witness Testimony at Trial**

The State presented testimony from eight occurrence witnesses—Brooks, Nelson, Turner, Johns, Henderson, Thomas, Pitchford, and Godfrey—at trial. All of them testified that they did

not see who fired the shots. But these witnesses had previously made statements implicating White and Carter as the shooters. After the witnesses denied making these statements, the State introduced the prior statements as substantive evidence.

Brooks had previously stated that he saw Carter cross the street to a nearby porch after taking the cocaine from Brooks and that he later saw a black male shooting a firearm from the ground near that location. At trial, Brooks denied stating that a black male was shooting at him from across the street.

Before trial, Nelson stated that he saw White and Carter on a porch across the street, with the gunshots coming from people on that porch. Nelson indicated that White might have been the shooter and that he saw White and Carter enter a white minivan driven by a woman during the shooting. In photo arrays and lineups, Nelson identified White as the person who hit Brooks in the head with a firearm and Carter as the individual who argued with Brooks. He further identified them both as having entered the white van. At trial, Nelson denied his prior statements, instead claiming that Chicago Police Detective Daniel Gallagher coerced him into implicating White and Carter.

In Turner's prior statements, he stated he saw both White and Carter shooting firearms during the incident. In photo arrays, Turner identified both White and Carter as the shooters, and identified White in a lineup. He further indicated he saw individuals resembling Carter and White shooting from a white minivan driven by a woman. At trial, he denied identifying White and Carter as the shooters but testified that White hit Brooks over the head with something shiny.

Before trial, Johns identified White and Carter as the shooters, specifying that White was standing near the gate by the porch. In photo arrays, Johns also identified Carter as one of the shooters and White as the one who hit Brooks in the head with a firearm. Johns identified Carter

in a lineup.  At trial, Johns did not recall making the identifications and testified that Gallagher told him who to identify in the photo arrays and coerced him into signing his written statement. He did testify at trial that White hit Brooks over the head with a firearm.

In Henderson's prior statements, he indicated Carter shot from the porch.  Henderson selected Carter from both a photo array and lineup, but, at trial, he did not recall making these identifications and indicated that he constantly used drugs and was high every day.

Before trial, Thomas stated Carter shot at Re-Re's house from across the street, making this identification in a photo array and a lineup.  He also identified White in a photo array and lineup as the person who hit Brooks over the head with a firearm.  At trial, Thomas did not recall these identifications, also testifying that Gallagher coerced him into identifying White and Carter and writing the contents of his statement.  Like some of the others, however, he did acknowledge at trial that White hit Brooks over the head with a firearm.

Pitchford previously stated that he saw a Range Rover pull up near the scene and Carter outside on the porch.  He thought something might happen, so he walked away and later heard gunshots.  After the gunshots stopped, he claimed he saw a white minivan driven by Tanisha Nash, whom he knew as Carter's girlfriend.  He could not see the two individuals behind the driver because the van had tinted windows.  At trial, Pitchford claimed to have signed his prior statement without reading it because he had heroin on him and Gallagher told him he would not be charged if he signed the statement.

Gallagher testified to the various witness identifications of White and Carter.  He denied that he coerced or threatened any witnesses.  Various assistant state's attorneys testified as to the witnesses' prior statements and grand jury testimony.  They emphasized that the witnesses previously acknowledged the voluntariness of their statements, did not claim to be under the

influence of drugs or alcohol at the time they gave the statements, and had not raised any claims of coercion or threats prior to trial.

Chicago Police Detective John Rawski, an expert on gangs, testified that the Brick Yard Fours, a gang affiliated with the Four Corner Hustlers, controlled drug transactions around the area of the crime. He also testified that, when gangs encroached on other gangs' territories and tried to sell drugs, the "home" gang would confront the encroaching gang and tell it to leave. If the encroaching gang failed to comply, violence could ensue.

### C. Conviction and Sentencing

After argument and deliberation, the jury found both White and Carter guilty of the first degree murder of Alexander and the attempted first degree murder of Nelson. The trial court sentenced White to fifty years in prison for murder, including a fifteen-year sentencing enhancement for possessing a firearm, and a consecutive sentence of ten years in prison for attempted murder, for an aggregate sentence of sixty years in prison.

## II. Direct Appeal

In a consolidated appeal with Carter, White argued: (1) the trial court abused its discretion by admitting cumulative prior inconsistent statements and by sending copies of these statements to the jury; (2) his counsel provided him with ineffective assistance by failing to request jury instructions on self-defense and second degree murder; (3) his counsel provided ineffective assistance by failing to move to strike or move for a mistrial when a witness testified that one of the detectives claimed that Carter had "beat so many murders," Doc. 20-24 at 25; (4) the trial court committed reversible error when it suggested to the jury that the jury should not need much time to reach a verdict; and (5) the trial court violated White's right to a jury trial in imposing the fifteen-year sentencing enhancement without submitting that issue to the jury.

The Illinois Appellate Court affirmed White's conviction and sentence on December 23, 2011. White then filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court on January 11, 2012, raising only the sentencing enhancement issue. The Illinois Supreme Court denied the PLA on March 28, 2012.

### III.     State Post-Conviction Proceedings

On December 27, 2012, White filed a timely *pro se* post-conviction petition, alleging, as relevant here: (1) his trial counsel provided constitutionally ineffective assistance by failing to call Tanisha Nash, Demond Coffee, Tara Moran, Tira Brock, or Yanang Woods as witnesses and to introduce police reports about Nash's van; and (2) his actual innocence. White attached to his petition affidavits from Nash, Coffee, Moran, Brock, Woods, Donald Rogers, Marquis Walker, and Montrell Knight, in addition to police reports indicating Nash's white minivan was parked near the scene of the shooting. White claimed that he was actually innocent of Alexander's murder, and that, instead, evidence pointed to Adarius James, known as "Pig," as the shooter. The trial court dismissed White's petition as frivolous and patently without merit on March 20, 2013.

On appeal to the Illinois Appellate Court, White contended that his post-conviction petition set forth an arguable claim of (1) ineffective assistance for failing to investigate and present Nash, Moran, and Rogers as witnesses, and (2) actual innocence. On April 13, 2016, the Illinois Appellate Court affirmed the denial of the petition. White filed a PLA with the Illinois Supreme Court on June 17, 2016, again raising the issues of ineffective assistance of counsel for failure to investigate several witnesses and actual innocence. The Illinois Supreme Court denied the PLA on September 28, 2016. White then filed a timely federal habeas corpus petition with this Court on March 31, 2017.

7

**LEGAL STANDARD**

A habeas petitioner is entitled to a writ of habeas corpus if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court or if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 404–05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). An "unreasonable application" of federal law occurs if the state court correctly identified the legal rule but unreasonably applied the controlling law to the facts of the case. *See id.* at 407. Whether a state court's application of Supreme Court precedent is unreasonable is judged by an objective standard. *Id.* at 409; *Winston v. Boatwright*, 649 F.3d 618, 624 (7th Cir. 2011).

**ANALYSIS**

The Court understands White to present the following claims in his petition: (1) ineffective assistance of counsel based on counsel's failure to investigate and call Nash, Moran, Rogers, and Knight at trial and to offer certain police reports into evidence; (2) ineffective assistance based on counsel's failure to tender jury instructions on self-defense or second degree murder; (3) ineffective assistance based on counsel's failure to object to testimony that Carter had "beat so many murders"; and (4) the trial court's imposition of a fifteen-year sentencing enhancement based on facts not decided by a jury. Respondent argues that White has

procedurally defaulted Claim 1, as it relates Moran and Knight, and Claims 2, 3, and 4. Respondent further asserts that Claim 1, regarding Nash, Rogers, and the police reports does not have merit.

## I.     Procedural Default

A petitioner can procedurally default a federal claim in two ways: (1) if the petitioner failed to exhaust the claim on one complete round of state court review, or (2) if the state court decided the claim on a state procedural ground. *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018). Here, Respondent argues that White failed to raise Claims 2 and 3 through one complete round of state court review and that the state courts decided Claim 4 and parts of Claim 1 on independent and adequate state grounds so as to preclude federal review. The Court addresses these arguments in turn.

### A.     Failure to Exhaust (Claims 2 and 3)

To avoid procedural default, a petitioner must fairly present his claims to all levels of the Illinois courts. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). To be "fairly presented," a petitioner must pursue his claim through one complete round of state court review, either on direct appeal or in post-conviction proceedings. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). In Illinois, this means appeals up to and including the filing of a PLA to the Illinois Supreme Court. *O'Sullivan*, 526 U.S. at 845–46; *Duncan v. Hathaway*, 740 F. Supp. 2d 940, 945 (N.D. Ill. 2010). When a petitioner has failed to present his federal claim to the state courts and the opportunity to raise that claim has subsequently passed, the petitioner has procedurally defaulted the claim and it is not available for federal habeas review. *Gonzales v. Mize*, 565 F.3d 373, 380 (7th Cir. 2009).

Respondent argues that White procedurally defaulted his claims for ineffective assistance of counsel based on the failure to tender alternate jury instructions regarding self-defense or second degree murder (Claim 2) and the failure to object to a witness' testimony about Carter (Claim 3) because White did not raise them on one complete round of state review before filing his federal habeas petition. Although ineffective assistance of counsel is a single claim, White must have raised the particular factual basis for each aspect of his ineffective assistance of counsel claim to preserve the respective argument. *Pole v. Randolph*, 570 F.3d 922, 934–35 (7th Cir. 2009). "A bare mention of ineffective assistance of counsel is not sufficient to avoid a procedural default; [the petitioner] must have 'identif[ied] the specific acts or omissions of counsel that form the basis for [his] claim of ineffective assistance.'" *Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009) (second alteration in original) (quoting *Momient-El v. DeTella*, 118 F.3d 535, 541 (7th Cir. 1997)). Thus, White "cannot argue one theory [of ineffective assistance of counsel] to the state courts and another theory, based on different facts, to the federal court." *Id.*

Though White raised an ineffective assistance of counsel claim based on counsel's failure to tender alternate jury instructions and counsel's failure to move to strike witness testimony on direct appeal, he failed to exhaust them because he did not bring them in his direct appeal PLA. He also did not raise these arguments in his post-conviction proceedings. Because White did not assert the specific bases for his ineffective assistance of counsel raised in Claims 2 and 3 on one complete round of state court review before raising them in his federal habeas petition, he has procedurally defaulted them. *Lewis*, 390 F.3d at 1025.

## B.     Independent and Adequate State Grounds (Parts of Claim 1 and Claim 4)

Procedural default also arises where the state court rejects a claim on independent and adequate state law grounds. *Oaks v. Pfister*, 863 F.3d 723, 726 (7th Cir. 2017). "A state law is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case." *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010). "A state law ground is adequate when it is a firmly established and regularly followed practice at the time it is applied." *Id.*

Respondent first argues that White's claims of ineffective assistance for counsel's failure to call Knight to testify is procedurally defaulted because the Illinois Appellate Court found that White forfeited the argument by not raising it in his post-conviction petition at the trial court level. White raised the failure to call Knight as part of his claim of actual innocence in his post-conviction petition, arguing that Knight's testimony was "newly discovered evidence" that "could not have been discovered with due diligence" and supported his actual innocence claim. Doc. 20-27 at 8. However, while claiming ineffective assistance for counsel's failure to investigate and call other individuals as witnesses, he did not pursue such a theory with respect to Knight. Because White did not argue that counsel committed ineffective assistance by failing to call Knight as a witness in his post-conviction petition, the Illinois Appellate Court found that ground forfeited. Under § 2254, forfeiture is an independent and adequate state ground precluding habeas review. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996) ("[F]ailure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court."). But to foreclose review on independent and adequate state grounds, "the state court must actually state in plain language that it is basing its decision on the state procedural default and that other grounds are reached only in the

alternative." *Jenkins v. Nelson*, 157 F.3d 485, 491 (7th Cir. 1998). Although the Illinois

Appellate Court continued to address the merits of White's forfeited claim, it made clear that it

reached the merits only in the alternative. Doc. 20-35 at 11 (prefacing discussion of the merits

by stating "[e]ven if we found defendant's argument concerning Knight not forfeited"). Thus,

the independent and adequate state ground doctrine bars review of the ineffective assistance of

counsel claim as it relates to counsel's failure to call Knight. *See Romero v. Battles*, 234 F.3d

1273 (Table), 2000 WL 1206691, at *3 (7th Cir. 2000) (claim procedurally defaulted where state

court prefaced analysis by stating "even if we considered the merits"); *Stevenson v. Gaetz*, No.

11 C 4393, 2013 WL 1385557, at *3 (N.D. Ill. Apr. 3, 2013) (claim procedurally defaulted

where state court prefaced discussion of merits by stating "assuming, arguendo, that defendant

had not [forfeited the claim]" (alteration in original)).

Next, Respondent contends that the Court cannot consider White's claim for ineffective

assistance resulting from counsel's failure to investigate or call Moran because the state court

dismissed the claim based on a state procedural rule. In Illinois, post-conviction petitions "shall

have attached thereto affidavits, records, or other evidence supporting its allegations or shall

state why the same are not attached." 725 Ill. Comp. Stat. 5/122-2. Affidavits without

signatures do not meet the requirement. *See People v. Harris*, 862 N.E.2d 960, 976, 224 Ill. 2d

115, 308 Ill. Dec. 757 (2007) (unsigned affidavits do not meet evidentiary requirement that a

petitioner support a claim for failure to investigate and call a witness with an affidavit from that

witness, citing *People v. Enis*, 743 N.E.2d 1, 13, 194 Ill. 2d 361, 252 Ill. Dec. 427 (2000)). The

Illinois Appellate Court upheld the dismissal of White's claim regarding Moran on post-

conviction appeal because, although White attached Moran's affidavit to his post-conviction

petition, Moran had not signed that affidavit. This amounts to an independent and adequate state

ground because the Illinois Appellate Court relied on the lack of evidentiary materials to support White's claim in disposing of it. *See, e.g.*, *United States ex rel. Johnson v. Gaetz*, No. 10 C 1525, 2010 WL 2044930, at *4 (N.D. Ill May 24, 2010) (appellate court's dismissal for lack of evidentiary support is an independent and adequate state ground). And, like the claim based on Knight's testimony, the fact that the Illinois Appellate Court proceeded to consider the merits does not allow the Court to review the substance of White's claim, where the court again made clear that the procedural issue was "fatal" and that it reached the merits only in the alternative. Doc. 20-35 at 14 (stating that "the lack of Moran's signature on her affidavit is fatal" but that "[e]ven overlooking this defect, Moran's purported testimony would not help defendant make out a postconviction claim").

Finally, Respondent argues that White's claim of an improper sentencing enhancement is procedurally defaulted because the Illinois Appellate Court held that White waived the claim. On direct appeal, the Illinois Appellate Court addressed White's argument under the plain-error test because he did not object to the enhancement at sentencing. Despite the court's consideration of whether plain error occurred, this "limited review does not constitute a decision on the merits" because it reviewed the claim "for plain error because of a state procedural bar," here, waiver. *Kaczmarek*, 627 F.3d at 592. Therefore, the state court applied an independent and adequate state ground to the sentencing enhancement claim, barring the Court's consideration of that claim. *See Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010) (petitioner did not raise *Apprendi* claim at sentencing and state court found no plain error, providing an independent and adequate state ground that precluded federal habeas review).

## C.     Exceptions to Procedural Default

A petitioner may nonetheless pursue a procedurally defaulted claim if he can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or can demonstrate that the Court's failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008). Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n.24, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) (citation omitted) (internal quotation marks omitted). Prejudice exists where the petitioner shows that the violation of his federal rights "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Lewis*, 390 F.3d at 1026 (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)). The fundamental miscarriage of justice exception is "limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002). This requires new, reliable evidence of the petitioner's innocence in light of which "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)).

In his petition, White asserts that his failure to raise Claims 2 and 3 on one full round of state review to the Illinois Supreme Court was the result of "appellate counsel's failure to raise those issues." Doc. 7 at 7. "Ineffective assistance of counsel . . . is cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). However, White's claim of ineffective assistance of appellate counsel needs to have been

"presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id.* at 489; *Toliver v. Pfister*, No. 13 C 8679, 2014 WL 4245788, at *4 (N.D. Ill. Aug. 27, 2014). White did not argue in his post-conviction proceedings that his appellate counsel was ineffective for failing to raise these issues. Thus, he has procedurally defaulted that claim as well. *See Toliver*, 2014 WL 4245788, at *4. Nor does White provide any basis for the Court to find cause or prejudice to excuse that procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000) (ineffective assistance asserted as cause for procedural default may itself be excused from procedural default if cause and prejudice is shown).

White presents no other argument to excuse his procedural defaults or to suggest actual prejudice resulting from these defaults. And although White raised a claim of actual innocence in his post-conviction proceedings in state court, he has not renewed the actual innocence argument before this Court to suggest that the Court should excuse his procedural defaults. Therefore, the Court finds no basis to excuse White's procedurally default of Claims 2, 3, and 4, and the parts of Claim 1 related to Knight and Moran. *See Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008) (petitioner not entitled to consideration of his procedurally defaulted claims where he did not present any argument to excuse the defaults).

## II.     Substantively Reviewable Claim (Parts of Claim 1)

The only claim remaining for the Court to review on the merits is White's contention that his trial counsel rendered ineffective assistance by failing to call Rogers and Nash, in addition to failing to present police reports concerning Nash's car, at trial. In order to establish constitutionally ineffective assistance of counsel, White must show (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In considering the first prong, the Court indulges "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and may not let hindsight interfere with its review of counsel's decisions. *Id.* at 689. As for prejudice, a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This means a "substantial," not just "conceivable," likelihood of a different outcome in the case. *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 112, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)). The Court need not address both prongs of the *Strickland* test if one provides the answer. That is, if the Court determines that the alleged deficiency did not prejudice White, it need not consider the first prong. *Ruhl v. Hardy*, 743 F.3d 1083, 1092 (7th Cir. 2014). In reviewing the Illinois Appellate Court's decision, the Court must apply a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013) (quoting *Cullen*, 564 U.S. at 188). Where the state court did not address one of the prongs, the Court conducts a *de novo* review of that prong. *Rompilla v. Beard*, 545 U.S. 374, 390, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005).

In this case, White claims that counsel should have called Rogers and Nash and introduced the police report about Nash's vehicle to undermine the state's theory that White and Carter were the shooters. According to Rogers' affidavit, he would have testified that he saw Carter standing in a group with Alexander on the day of the incident, that Carter left before the incident occurred, and that Rogers did not recall seeing White at the scene. Rogers also

indicated that the dispute was between a group led by "Pig" and one lead by Alexander but that he did not actually see the shootings. Nash stated in her affidavit that she was down the block at the candy store at the time of the incident and walked back to the crime scene after hearing shots. She indicated that her white van, which one witness identified as the getaway vehicle during the crime, was inoperable on the day of the shooting and parked on the street behind police tape. Nash further stated that Carter was not her boyfriend and she did not know White. The police reports White contends counsel should have introduced indicate that Nash's white van was parked at the crime scene after the shootings.

The Illinois Appellate Court rejected White's claim of ineffective assistance. With respect to Rogers, the Court found nothing in the record demonstrated that White's trial counsel should have known of Rogers as a potential witness. The Court also found that White was not arguably prejudiced by counsel's failure to call Nash because, at most, Nash could have established that she was not the getaway driver but would not have demonstrated that White and Carter were not the shooters or did not enter a white van during the shooting.

Initially, the Illinois Appellate Court's decision is not contrary to clearly established law, where the court correctly cited to *Strickland* as the governing standard. *Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006) ("A decision applying the correct legal rule to the facts of a case is not 'contrary to' within the meaning of § 2254(d)(1)."). White cannot show that the Illinois Appellate Court erred in resolving his ineffective assistance claim because he cannot demonstrate that the failure to call these witnesses or introduce the police report prejudiced him.[2] The jury had before it conflicting testimony regarding White and Carter's involvement in the

_____

[2] The Court addresses only the prejudice prong here because it disposes of White's claim. Because the Illinois Appellate Court did not address the prejudice prong of *Strickland* as it related to Rogers' testimony, the Court reviews the prejudice aspect of that part of the claim *de novo*. *See Rompilla*, 545 U.S. at 390.

shootings, with all occurrence witnesses refusing to identify White as one of the shooters at trial but having done so in previous statements and testimony. The trial court admitted those prior statements as substantive evidence for the jury's consideration. Neither Nash nor Rogers could testify as to the shooting itself, acknowledging that they were not present at the time of the shooting and instead only witnessed events that occurred before or after the shooting. *See Carter v. Duncan*, 819 F.3d 931, 948–49 (7th Cir. 2016) (state court did not unreasonably determine that counsel's failure to call a witness did not prejudice petitioner where the witness provided vague evidence about petitioner's activities and could not unequivocally testify that petitioner did not have a gun). Although Rogers did not recall seeing White at the scene that day, given that he did not witness the shooting, White cannot show that Rogers' proffered testimony would have had a substantial likelihood of leading to a different outcome, especially considering the jury's rejection of the in-court testimony by the occurrence witnesses that they could not identify White as the shooter against those witnesses' prior statements, admitted as substantive testimony, that all supported a finding that White was one of the shooters. *Cf. Blackmon v. Williams*, 823 F.3d 1088, 1106–07 (7th Cir. 2016) (finding prejudice for failure to introduce seven alibi witnesses who could have testified to petitioner's presence at a barbeque at the time of the crime when compared against weak eyewitness evidence and no physical evidence or motive).

The same analysis supports the appellate court's finding that the failure to introduce Nash's testimony or the police report about Nash's van did not prejudice White. Like Rogers, Nash admitted she did not witness the shooting. As the Illinois Appellate Court pointed out, her testimony could have rebutted implications that she was the driver of the white van in which Carter and White were said to have left the scene. But the evidence at trial did not focus on the ownership of the white van used in the incident, with only Pitchford indicating that Nash drove

the van.  The jury also heard testimony from Turner that the van in question did not belong to

Nash, which contradicted Pitchford's statement and suggests the potential cumulative nature of

Nash's testimony and the police report about the operability of her van.  And Nash's testimony

would not have undermined any of the occurrence witnesses' credibility.  *Cf. Sussman v. Jenkins*,

636 F.3d 329, 358–59 (7th Cir. 2011) (finding petitioner was prejudiced by counsel's failure to

introduce testimony of witness that would have discredited a central witness in the case).

Ultimately, the Court agrees that Nash's testimony and the police report indicating Nash's van

was parked at the scene do not suggest a reasonable probability of a different outcome if

introduced at trial, particularly where Nash claims not to have known him at all and so would not

have been able to identify whether he was present at the scene at any time that day.  *Cf. United

States ex rel. Hampton v. Leibach*, 347 F.3d 219, 256 (7th Cir. 2003) (counsel's failure to

investigate two potential eyewitnesses who would have undermined the eyewitness testimony

presented at trial was prejudicial).  Her testimony and the police report instead would have

touched on a collateral matter.  *See Carter*, 819 F.3d at 949 (where potential testimony would

have had limited value, petitioner did not establish prejudice for counsel's failure to introduce it).

Because White has not shown prejudice arising from trial counsel's failure to call Rogers or

Nash or introduce the police report about Nash's van, his ineffective assistance of counsel claim

based on these alleged deficiencies fails.

## III.    Evidentiary Hearing

In his petition, White also requests an evidentiary hearing for his claim of ineffective

assistance of counsel for the failure to call witnesses.  He claims the state post-conviction court

denied this request and Nash's affidavit demonstrates ineffective assistance of counsel.  But even

taking Nash's affidavit as true, as discussed above, White has not alleged facts that would entitle

him to relief. Therefore, he is not entitled to an evidentiary hearing. *See Davis v. Lambert*, 388 F.3d 1052, 1061 (7th Cir. 2004) (where § 2254(e)(2) does not apply because the petitioner tried to develop a factual basis for his claim in state court, a petitioner may be entitled to an evidentiary hearing where "(1) the petitioner alleges facts which, if proved, would entitle him to relief and (2) the state courts, for reasons beyond the control of the petitioner, never considered the claim in a full and fair hearing"); *Hidou v. Lamb*, No. 17 C 6985, 2019 WL 2773639, at *18–19 (N.D. Ill. July 2, 2019) (denying request for evidentiary hearing where petitioner only argued that "an evidentiary hearing would provide the Court with more information than that contained in the written record, so [the Court] could better evaluate his claims," but the factual record did not allege facts that would entitle the petitioner to relief).

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (citing 28 U.S.C. § 2253(c)(2)). To make a substantial showing, the petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983)). The requirement of a certificate of appealability is a threshold issue and a determination of whether one should issue neither requires nor permits full consideration of the factual and legal merits of the claims. "The

question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 U.S. at 342.

For the reasons stated above, the Court finds that there can be no showing of a substantial constitutional question for appeal, as reasonable jurists would not find this Court's rulings debatable. *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011) (citing *Slack*, 529 U.S. at 484–85). Accordingly, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court denies White's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).

Dated: August 7, 2019

SARA L. ELLIS
United States District Judge